## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-191 (JEB)** |
| **v.** | : | |
| | : | |
| **RICHARD AVIRETT,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter.  For the reasons set forth herein, the government requests that this Court sentence Defendant Richard Avirett to forty-five days' incarceration. The government also requests that this Court impose, consistent with the plea agreement in this case, $500 in restitution.

### I.  Introduction

Defendant Richard Avirett is 50 years old and the co-manager of a cigar and bourbon lounge.  Avirett eagerly joined the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Avirett pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.   The government's recommendation is supported by Avirett's (1) statements on social media on January 5, 2021 that he was going to Washington, D.C., to "pick a fight" with Congress; (2) entry into a pair of rooms in the Capitol building on January 6 that are never open to the public, including a Senate conference room near the Lower West Terrace (LWT) tunnel, where he rifled through papers he found in one of the rooms; (3) social media posts that supported violence prior to January 6; (4) dissemination of photographs of the violence against police; (5) false statements to FBI agents and the press that he did not enter the Capitol; (6) post-January 6 statements on social media purporting to justify the riot and his own unlawful conduct on January 6; and (7) lack of remorse for his unlawful conduct on January 6.

The Court must also consider that Avirett's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Avirett's crime support a sentence of forty-five days' incarceration and $500 in restitution in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 25, Statement of Offense paragraphs 1 – 7. As the Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most sedate to the most violent – contributed, directly and indirectly, to the violence and destruction of that day.

Avirett entered the Capitol through a broken window of an office suite on the LWT").  The entrance consists of a flight of stairs leading to a doorway. On January 6, 2021, however, the construction of the inaugural stage converted the stairway into a 10-foot-wide, slightly sloped, short tunnel that was approximately 15 feet long.  That tunnel led to two sets of metal swinging doors inset with glass.  On the other side of the two sets of swinging doors is a security screening area with metal detectors and an x-ray scanner and belt, that leads into the basement of the Capitol Building.  The exterior of the tunnel is framed by a stone archway that is a visual focal point at the center of the West Front of the Capitol Building.   This archway is also of great symbolic significance as it has been the backdrop for nine presidential inaugurations, is draped in bunting during the event, and is the entrance for the President-Elect and other dignitaries on Inauguration Day.

The violent and physical battle for control over the so-called tunnel and doorway area continued for over two hours, during which time rioters repeatedly assaulted, threatened, pushed, and beat police.  The battle for the LWT entrance involved intense hand-to-hand combat, and it was one of the most violent confrontations against police on January 6. During this battle, a mob assaulted the vastly outnumbered officers with all manner of objects and weapons, landing blow after blow in a concerted effort to breach the doorway to the interior of the Capitol, disrupt the certification, and overturn the election results by force.

*Defendant Avirett's Role in the January 6, 2021 Attack on the Capitol*

The defendant, Richard Avirett, is a small business owner in the Tampa, Florida area. He is a former corporal in the United States Marine Corps and was also a private military contractor and firearms instructor.

3

On January 1, 2021, Avirett posted a message to his personal Facebook page, stating, "Dear congress thank you for giving me and the rest of the country a little bit of the money you took from me anyways…but We are still coming for you on the 6th."

On January 5, 2021, Avirett posted another message to his personal Facebook page, stating, "There are only 2 reasons to come to DC…to pick a fight or to look at monuments of men who picked fights…I am not here for monuments."

Also on January 5th, Avirett posted another message to his Factbook page, containing a statement attributed to Patrick Henry, and a picture of the Korean War Memorial in Washington D.C.  *See* Image 1.



*Image 1, Facebook post showing Korean War Memorial.*

On January 6, 2021, Avirett attended the "Stop the Steal" rally held near the National Mall in Washington D.C. Avirett later walked to the West Front of the Capitol building, where police

officers in riot gear had fired tear gas at a growing mob of rioters to prevent them entering the Capitol building.  Avirett posted photos of this to his Facebook account.

Avirett sent text messages to his wife that the situation at the Capitol had become violent, saying "[t]his is the most beautiful fight I ever saw."

Avirett spent approximately thirty minutes taunting police officers stationed near the inauguration stage on the West Terrace of the Capitol building. He criticized the officers for maintaining their posts, saying "this is not sacrifice, this is not service" and "this is what the plantation looks like, enjoy your cotton."

At 3:20 p.m., Avirett sent a selfie photo of himself and the mob on the west side of the Capitol. This image included a tower for the media that was under construction for the Inauguration in the background  *See* Image 2.



*Image 2, Selfie photo* of *Avirett and the mob sent to Kimberly Avirett.*

Beginning at 3:40 p.m., Avirett sent multiple messages and photographs on Facebook to his wife, Kimberly Avirett.  One stated,  "They just targeted me".  Others included photos of police on the Upper West Terrace.  *See* Images 3, 4.

 

*Images 3, 4 sent by Avirett showing police protecting the Upper West Terrace*

At 3:49 p.m., Avirett messaged "…we just got fucked up". At 4:04 p.m., Avirett messaged "Its bad". Kimberly Avirett expressed concern, and at 4:10 p.m., Avirett messaged that he could not post "but its violent." At 4:12 p.m., Avirett messaged, "This is the most beautiful fight I ever saw".

At 4:24 p.m., Avirett sent the following photo to Kimberly Avirett on Facebook. *See* Image 5.



*Image 5, Facebook message sent by Avirett to Kimberly Avirett*

At 4:27 p.m., Averitt messaged that, "Yes it's gotten violent." Kimberly Avirett asked Avirett, "With ya'll and the police or who?", and Avirett responded "Yes police," and "They just got an officer…" Avirett sent additional photographs of a line of police officers guarding the Upper West Terrace, and pictures of the mob.

Avirett then went to the LWT near the tunnel. Other rioters had broken the first office window immediately to the north of the tunnel. This window was on the outside of a room identified as Senate Terrace 2 – Mezzanine (ST-2M). *See* Image 6. Room ST-2M is a conference room on the Senate side of the U.S. Capitol Building used by Senators and their staff and is not open to the public. In Image 6, Room ST-2M is circled in green, immediately to the left of the tunnel.



*Image 6, screenshot with the tunnel circled in red, and the broken window outside ST-2M, circled in green.*

Prior to and after breaking that window, rioters waged a long, violent battle with police at the tunnel. Rioters took furniture and office materials, like the floor lamp shown above in Image 6 and used those items to battle officers in the tunnel. Avirett was in the vicinity of this battle and would have observed this clash between rioters and police before he entered the Capitol.

Avirett climbed through the broken exterior window of ST-2M and entered the Capitol. Avirett knew at the time that he did not have lawful authority to enter the Capitol. *See* Image 7, Exhibit 1. There was broken glass on the floor inside the window.



*Image 7, Screenshot of Exhibit 1 at video time 00:35, as Avirett entered ST-2M through the broken window.*

Shortly after Avirett entered ST-2M, another rioter announced that someone had been shot and killed.

When Avirett entered ST-2M office, other rioters were tearing apart a table and other furniture inside the office. Avirett was in the same room near rioters when they broke the legs off of a table and stated they were going to "use the table as a shield". *See* Image 8 and Exhibit 2. Rioters handed table legs, a tabletop, lamps, a chair, and desk drawers out of the broken window of ST-2M. Outside, other rioters used these items to assault police who were locked in a battle with rioters in the tunnel.



*Image 8, screenshot from Exhibit 2 at video time 00:27.  Open-source video of Avirett (circled in red) in ST-2M.*

Avirett, circled in red in Image 9, below, picked up a rectangular object and later, a long blue rectangular cushion.



*Image 9, screenshot of Exhibit 3 at video time 00L51, Avirett circled in red.*

Shortly thereafter, a group of rioters inside ST-2M entered an interior hallway. Avirett watched as other rioters removed an interior door from its hinges and moved a large tabletop through the doorway. Other rioters then passed the door through the window to the mob outside.

Avirett grabbed the long blue rectangular cushion and followed rioters out of ST-2M into an interior hallway.  From the interior hallway, Avirett entered another office, ST-4M.  In this office, Avirett rifled through papers on a desk while another rioter used a rod to break a window. *See* Image 10 and Exhibit 4.



*Image 10, Screenshot of Ex. 4 at video time 01:00.  Open-source video of Avirett inside ST-4M office.*

While inside the Capitol, Avirett texted "I'm inside" to another individual.

Shortly after this, Avirett went back to the ST-2M office.  He climbed out of the Capitol through the broken window in the ST-2M office through which he had entered the Capitol approximately seven minutes earlier.

At 4:53 p.m., Avirett sent additional messages on Facebook. He sent photos of rioters as they carried a chair from the ST-2M office towards the officers in the tunnel. Shortly thereafter, Avirett sent another photograph of rioters who lifted a large piece of wood towards the tunnel.

This image also showed rioters that stood on the window ledge outside the broken window of the ST-2M office. *See* Images 11, 12.



*Images 11, 12. Photos sent by Avirett showing rioters outside tunnel and window of ST-2M office.*

At 4:57 p.m. EST, Avirett sent, from Facebook messenger, a photo of rioters who were just outside the Tunnel. *See* Image 13.



*Image 13, photo sent by Avirett showing rioters outside the tunnel.*

At 5:00 p.m., Kimberly Avirett sent Avirett a Facebook message asking, "Did someone really get into Nancy Pelosis office" Avirett sent a photo in response showing the inside of the Capitol. *See* Image 14. The windows in this photograph match the appearance of the windows in the ST-2M and ST-4M office suite.



*Image 14, photo sent by Avirett of office inside the Capitol.*

13

At 5:15 p.m., Avirett sent a message to Kimberly Avirett that he had been "hit" and shortly thereafter, another message that said "[s]hot me in the calf point blank".

On January 12, 2021, Avirett posted to his firearms training business Facebook account: "Pick a side and mean it… in the coming days violence and destruction could (I pray diligently not) happen, but if it does, it is meant to look like conservatives are doing it, and it's won't matter the truth; you will be guilty. You're either in or out. Decide now, not when you're in the middle."

On August 9, 2021, Avirett posted on Facebook a photo of the LWT on January 6, 2021, depicting a Trump flag being thrown at a line of officers in riot gear guarding an entrance to the Capitol. Avirett commented "[o]ne day we will look at this picture and know we were right and we had the chance…."

Avirett gave an interview to a press outlet (Raw Story) where he falsely told the reporter that he had not entered the Capitol on January 6. The article was published on September 7, 2021. Avirett is quoted in the article as follows:

> I don't know why there was a conflict.  I didn't' see a lot of conflict.  The people that I was around were singing "The Star-Spangled Banner" and "God Bless America."  I don't' think anyone was there to be bad.  The people that were around me weren't there to do anything like that.  Nobody even knew anything about people going inside when I was there until it was over.

A copy of the complete article is attached as Exhibit 5 to this sentencing memorandum.

While Avirett has acknowledged during his guilty plea hearing that he did enter the Capitol building, he has not expressed remorse for his actions on January 6, 2021.

*Social Media Posts*

On January 6, 2021, Avirett used Facebook messenger to send photos and messages about what he experienced at the Capitol in real time. Some of Avirett's messages to Kimberly Avirett relating to his participation in the riot are incorporated in the statement of facts above. Avirett sent

14

messages to his wife and these messages demonstrate that his later statements on Facebook and to the reporter were false information. Avirett continued to justify the mob's actions after the riot on social media, including on his business Facebook account. Avirett continued to support future violence in his posts.

*Avirett's Voluntary Interview with the FBI*

On January 20, 2021, Avirett gave a voluntary telephone interview to the FBI. During the interview, Avirett admitted he attended the rally in Washington D.C. and that he was at the rear of the Capitol for hours. He claimed he was rendering first aid to rioters who were pepper sprayed and injured. He falsely told the FBI that he did not enter the Capitol.

Avirett did not cooperate with the Probation Office in two significant areas.  He did not provide a signed financial release form to Probation, and he did not provide a statement to Probation regarding his actions on January 6.  ECF 27, ¶¶ 32, 72.

*The Charges and Plea Agreement*

On June 6, 2023, the United States charged Avirett by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On September 15, 2023, pursuant to a plea agreement, Avirett pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Avirett agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Avirett now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Avirett faces up to six months of imprisonment and a fine of up to $5,000. Avirett must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As

15

this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of forty-five days' incarceration and $500 restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).

One of the most important factors in Avirett's case is his entry into the Capitol at ST-2M – a sensitive area of the Capitol.  Avirett climbed into a broken window and over broken glass to enter ST-2M.  This area, a conference area for Senators and their staff, is not open to the public. and.  Inside ST-2M, Avirett was present when rioters broke apart furniture that was subsequently used to battle police in the LWT tunnel.  He entered a second office, ST-4M, which office is not open to the public, and rifled through papers on a desk.  Avirett was part of the mob on the LWT – where police were battling for hours to protect the Capitol.

Before January 6, Avirett posted on social media that he was coming to D.C. "to pick a fight…"  On January 6, Avirett admitted that the mob was "violent" but he was adamant that "[t]his is the most beautiful fight I ever saw."  Avirett shared photographs of the rioters who battled with police at the LWT tunnel.  He also shared photographs of the police standing before the mob, the

officers protected the Capitol on the Upper West Terrace.  After January 6, Avirett endorsed future violence and urged others to "pick a side and mean it".

Later, Avirett minimized the actions of the rioters.  Months after the attack on the Capitol, Avirett gave a press interview to spread false information that he "didn't see a lot of conflict" "and "[n]obody even knew anything about people going inside [the Capitol] when I was there…"   To the press, Avirett denied going into the Capitol, even when confronted with video evidence to the contrary.  Finally, Avirett gave a false statement to the FBI, where he claimed he did not enter the Capitol.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of forty-five days' incarceration in this matter.

### B.  Avirett's History and Characteristics

As set forth in the PSR, Richard Avirett's criminal history consists of a misdemeanor conviction for Operating a Vehicle while Impaired (Alcohol and/or Drugs), and several traffic infractions. ECF 22 ¶¶ 25-29. Although Avirett's prior military service is laudable, it renders his conduct on January 6 all the more troubling. As a former United States Marine, the military branch whose motto is "*semper fidelis*," ("always faithful")  Avirett should have upheld his oath and declined to enter a federal building through a broken window while a mob was attacking police nearby.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a

political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

*Specific Deterrence*

The need for the sentence to provide specific deterrence to Avirett also weighs heavily in favor of a term of incarceration. Despite his lack of criminal convictions and his prior military service,  his actions on January 6, 2021, demonstrates a clear disrespect for the law.  Although Avirett accepted responsibility by stipulating to a statement of the offense (ECF 25) and entering into a plea agreement (ECF 24), his post-January 6 statements are troubling. Avirett minimized the seriousness of the attack on the Capitol through his social media posts. He gave an interview to press months after the attack where he denied that he entered the Capitol and minimized the attack on the Capitol.  He gave false information to the FBI when he denied being in the Capitol.

Months after the attack on the Capitol, Avirett continued to publicly provide false information about his involvement and the rioters' actions at the Capitol on January 6, 2021.

The Court should view any remorse Avirett expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

With the 2024 presidential election approaching, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 is not implausible. The Court must sentence Avirett in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Avirett based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Avirett has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Jordan Revlett*, 21-cr-281 (JEB), the defendant, much like Avirett, took numerous photos inside and outside the Capitol building using his mobile telephone showing physical altercations between police and rioters; circulated those photos and videos to his followers on social media; while inside the Rotunda, obtained a bullhorn and used it to make statements of unknown content and joined in chants with other rioters against the police; falsely told the FBI that he was invited into the Capitol by United States Capitol Police Officers; lied to his social media followers; and did not express genuine remorse for his conduct on January 6. Revlett pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, and picketing in the Capitol). This Court sentenced Revlett to 14 days' incarceration and 12 months' probation. Since the government is not seeking a term of probation for Avirett here—in light of the intervening decision in *United States v. Little*, 78 F.4th 453, 456 (D.C. Cir. 2023), holding that a defendant

convicted of a petty offense may be sentenced to either incarceration or probation but not both—this Court should impose a longer term of incarceration to provide adequate deterrence.

In *U.S. v. Frank Giustino*, case number 1:23-CR-16 (JEB), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in the Capitol building). Giustino aggressively confronted police prior to entering the Capitol at 2:16 p.m. only three minutes after other rioters broke open the Senate Wing Door and shattered nearby windows in the initial breach of the Capitol. On June 23, 2023, Giustino appeared for a status conference at which he was disrespectful, refused to acknowledge the authority of the Court, and aggressively belittled the attorneys. This Court sentenced him to 90 days in jail.

In *United States v. Adam Honeycutt*, 22-cr-50 (CJN), the defendant pleaded guilty to violating 40 USC § 5104(e)(2)(G) for his conduct on January 6. Honeycutt entered the Capitol through the broken window into ST-2M. He recorded a video inside the conference room and posted still photographs to his Facebook account that showed a gloved hand holding a broken furniture leg from the Capitol and confrontations between rioters and police and property destruction committed by other rioters. Honeycutt gave a false explanation of his conduct on Facebook that minimized his involvement in the riot.  Judge Nichols sentenced Honeycutt to 90 days' incarceration, consecutive to an existing sentence he was then serving.

In *United States v. Annie Howell*, 21-cr-217 (CJN), the defendant pleaded guilty to violating 18 USC § 1752(a)(1) (entering and remaining in a restricted building or grounds) in connection with entering the Capitol Building through the broken window into ST-2M. Howell bragged on social media about making it inside the Capitol and uploaded a video attempting to lead a chant of "whose house, our house" in the ransacked conference room.  Judge Nichols

sentenced Howell to 36 months' probation with 60 days intermittent confinement at a local jail, and 60 hours community service.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Avirett must pay $500 in restitution, which reflects in part the role Avirett played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Avirett's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 92.

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to forty-five days' incarceration and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Avirett's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Lynnett M. Wagner*
       Lynnett M. Wagner
       Assistant United States Attorney
       601 D Street NW
       Washington, D.C. 20530
       (402) 661-3700
       LWagner@usa.doj.gov
       Nebraska Bar No. 21606